**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | :: | |
| | :: | **CRIMINAL ACTION FILE** |
| **v.** | :: | |
| | :: | **NO. 1:15-CR-316-MHC/AJB** |
| **CHARLES ANTHONY GARNER** | :: | |

**UNITED STATES MAGISTRATE JUDGE'S**
**FINAL REPORT AND RECOMMENDATION**

Charles Anthony Garner is charged in a two-count indictment with violating 18 U.S.C. § 922(g) and 26 U.S.C. § 5861. [Doc. 1]. He seeks to suppress from his trial any evidence seized and statements that he made on March 4, 2015, arguing that they are the fruits of a traffic stop conducted in violation of the Fourth Amendment. [Doc. 12]. The Court held an evidentiary hearing, [Doc. 31 (hereinafter "T_")], after which the parties filed briefs. [Docs. 35 (Govt.), 36 (Garner), and 37 (Govt.)]. For the following reasons, the undersigned **RECOMMENDS** that the motion be **DENIED**.

***Facts***

The evidentiary record establishes the following. On March 4, 2015, at approximately 1:30 p.m., Doraville (Georgia) Police Department ("DPD") Officer Lynn

Wade[1] attempted to perform a traffic stop on Garner for having an unlawful "starburst" or "spiderweb" windshield crack in the vehicle Garner was operating. T16, 18. Wade described such a crack in a vehicle's windshield as unlawful if it was greater than three inches by three inches, which she further described by making a "C" with her thumb and forefinger. T15-16, 26. She had conducted more than fifty traffic stops for such a violation when she worked for the Cartersville Police Department, and had performed fifteen to twenty traffic stops on this basis in the fourteen months that she was a DPD officer. T13, 16.

On this occasion, Wade was in her patrol car traveling south on Buford Highway in the left hand lane near the intersection of Oakcliff Road, when she observed a white 1993 Honda Civic approximately one car length in front of her with multiple windshield cracks on the driver's side which she alternately described as "starburst" or "spiderweb" cracks. T17-20, 47. The encounter was recorded by Wade's dashboard camera. Govt. Ex. 1. She followed the vehicle for approximately a quarter of a mile. T23. She also observed that there was a passenger in the front seat and another passenger seated behind that passenger. T48. Although the windshield crack is not

---

[1]     At the time of the hearing, Wade was a corporal in the DPD's Criminal Investigative Division. She began as a patrol officer with the Cartersville (Georgia) Police Department in 1999. T13

visible on the video recording of the incident, Wade testified that the video was not as good a quality as viewing the windshield through her naked eye.  T22-23, 48; *see also* Govt. Ex. 1.  The Court finds that video is not sharp and appears not to have been recorded using digital technology.

As she was following the Honda, Wade ran the license plate on her on-board computer and determined that the vehicle was insured and not stolen.  T23.

The Honda then made a left turn into a shopping-center parking lot, at which time Wade had a better, clearer view of the windshield crack for about one second.  T23-24, 25, 49.  At that point, Wade illuminated her blue lights to initiate a traffic stop as the Honda was pulling into a parking spot.  T26, 49; Gov't Ex. 1 at 01:43 (showing Honda already pulling into parking spot at the time the video recording's sound turned on).  The Honda pulled completely into a parking space, in between two parked cars.  T27.  Wade placed her vehicle so as to block the Honda from exiting the parking spot.  T28.

Garner immediately got out of the vehicle, Govt. Ex. 1 at 01:46, and Wade, using a stern voice, directed him to get back in the car; after briefly looking at Wade, Garner at first raised his hands and then complied by getting back in the car.   T29; Govt. Ex. 1 at 01:50.  However, after several seconds, Garner reopened the door, exited

3

the vehicle and fled on foot, running in a southerly direction.   T29; Govt. Ex. 1 at 02:01-04.  He shut the driver's door as he started running in order to get around to the front of the Honda.   *Id.*   Wade initially started to pursue him but then decided to return to the vehicle and make contact with the two passengers.   T30; Govt. Ex. 1 at 02:31.  She also reported Garner's flight, along with a description (white male wearing coveralls and tattoos on both arms), on her portable radio to DPD dispatch.  T30.  An unidentified concerned citizen approached Wade and told her that the subject ran into a check-cashing business, and Wade also relayed that information to dispatch.  T31.

Wade viewed the spiderweb cracks on the windshield[2] after the two passengers were removed from the Honda, but she did not measure or photograph the cracks in the windshield.  T31-32, 52.[3]  The male passenger, seated in the rear of the Honda, had two

---

[2]    Mary Susan Cannon testified that Stacey McDougall, who was the owner of the Honda and a mutual friend of Garner and Cannon, was living with her when McDougall purchased the Honda in October 2014.  T96.  Cannon further testified that the Honda had a crack across the bottom part of the windshield that "y'd off  about five inches on either side."  T97; *see also* T100 (describing crack as "one crack and one little crack y'd off about five inches up" while the other crack "kept going off across straight to the bottom").  Those cracks were not repaired and they did not change as of the time she last saw the vehicle, which was shortly before Garner's arrest.  T98-99.

[3]    Wade testified that she incorrectly cited Garner for improper window tint, in violation of O.C.G.A. § 40-8-73.1, instead of the starburst-cracked windshield, in

4

outstanding warrants.  T50-51; Govt. Ex. 1 at 11:43.  The passengers were removed from the car.  Govt. Ex. 1 at 12:25-12:48.  In opening the driver's door, officers located between the driver's door and the driver's seat a loaded 20-gauge shotgun that appeared to be sawed off.  T42, 53; Govt. Ex. 1 at 14:12, 14:29.  Another loaded shotgun was discovered underneath the back seat where the male passenger had been seated.  T53-54; Govt. Ex. 1 at 19:01-07.[4]

Less than ten minutes after the start of the encounter, Garner was arrested for obstruction of a law enforcement officer inside a Western Union office at the bus stop, about 500 yards from where the Honda was parked.   T32-33, 60, 67; *see* Govt. Ex. 1 at 08:09 (in which another officer is heard reporting over the radio that the suspect was in custody).  Garner was described as winded and sweating as if he had been running.  T63, 73.  A search incident to his arrest revealed a pocket knife in his top overalls pocket and three shotgun shells in his right front pocket.  T33, 74. DPD Office Mojica placed him in the back of the patrol car and ran his criminal history, which was positive for at least one felony parole warrant.  T74-75.

_____

violation of O.C.G.A. § 40-8-73.  T46, 52.

[4]    Police also located a large number of keys, some watches, and some flashlights.  T83.

5

**Parties' Contentions**

The Government first argues that Garner was not seized by Wade because he pulled into the parking spot at the shopping center voluntarily and intentionally, and thus, the facts in this case are more like cases discussing an officer's approach of a stopped vehicle as opposed to a traffic stop.  It therefore argues that Garner does not have standing to argue that a traffic stop occurred.  [Doc. 35 at 9 (citations omitted)]. Second, the Government contends that even if Wade converted the encounter into a stop by pulling in behind the Honda, illuminating her blue lights, and ordering Garner to reenter the Honda, she nonetheless had a lawful basis to do so because she saw a starburst or spiderweb crack in the windshield, and thus the stop was supported by reasonable suspicion.  [*Id.* at 9-11].  Further, it argues that Wade had the authority to order Garner to get back into the vehicle as part of a lawful investigative detention.  [*Id.* at 11 (citation omitted)].

Third, the Government contends that the shotgun shells should not be suppressed because Garner was lawfully arrested for fleeing Wade, which amounts to the crime of obstruction under Georgia law.  [*Id.* at 11-12].  Fourth, it argues that Garner lacks standing to challenge the search of the Honda because he voluntarily abandoned it by fleeing from it.  [*Id.* at 11-14].  The Government further argues that Garner's

6

abandonment was not prompted by or the fruit of any unlawful action by Wade because Wade was authorized to stop the vehicle. [*Id.* at 14-17]. It also argues that the police were authorized to search the Honda incident to arrest of the back-seat passenger. [*Id.* at 17].

In response, Garner argues first that Wade performed a traffic stop because, according to her own testimony, she activated her blue lights as soon as Garner turned into the shopping center, she blocked the Honda from exiting the parking spot, and she commanded him to reenter his vehicle. [Doc. 36 at 6]. Second, Garner contends that the traffic stop was unlawful because it was based on an unreasonable mistake of fact that the Honda had an illegally damaged windshield. [*Id.* at 6-7]. While acknowledging that an officer's seizure upon a reasonable mistake of fact is lawful, [*id*. at 7 (citations omitted)], Garner contends that Wade made an unreasonable mistake of fact because she interchanged starburst and spiderweb cracks, which are not the same ([*id.* at 2-3 (citing to Wade's testimony that a starburst crack is one that is an initial crack that expands outward (T47) and a spiderweb crack is a crack going in multiple directions (T15))]; she made this observation despite driving behind the vehicle that contained three individuals, which surely would have obstructed her line of sight; she only got a good view of the windshield when the Honda turned, and only for one

7

second; and she did not describe the violation in her police report and, in fact, cited Garner for a window-tint violation and not either a spiderweb- or starburst-cracked windshield. [*Id.* at 9-11].

He next argues that the unconstitutional stop tainted the ensuing search of his person. [*Id.* at 11]. He argues that his flight itself was a fruit of the illegal stop and that no significant intervening events occurred between the unconstitutional traffic stop and his subsequent arrest and search. [*Id.* at 13]. Therefore, the shotgun shells were unlawfully seized from him. [*Id.* at 14]. He also contends that he has standing to challenge the search of the Honda because any abandonment was the product of the illegal stop of the Honda. [*Id.* at 14-17 (relying upon *United States v. Beck*, 602 F.2d 726, 729-30 (5th Cir. 1979)[5]]. He also attempts to distinguish the cases relied upon by the government because in those cases, there was no precipitating illegal conduct by the police. [*Id.* at 17]. Moreover, he claims that his post-arrest statements were the fruit of his unlawful arrest and therefore must be suppressed. [*Id.* at 18-21].

In reply, the Government again argues that Wade had reasonable suspicion to investigate due to the cracks in the Honda's windshield. [Doc. 37 at 2]. It argues that

---

[5]      In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

AO 72A
(Rev.8/8
2)

Georgia law does not differentiate between starburst and spiderweb cracks and that Wade believed they were the same.  [*Id.* at 4 (citing T15, 20)].  It also argues that the passengers were not seated on the same side as the cracks, so their presence in the Honda would not have obstructed Wade's view.  [*Id.*].  The Government further argues that Wade testified that she had an unobstructed view of the windshield both as she followed the vehicle and when it turned left into the shopping center parking lot, and her belief that the windshield was unlawfully cracked was corroborated by Cannon's testimony that the windshield had multiple cracks approximately five inches long.  [*Id.* at 4].  It also argues that Wade's misciting of the appropriate violation code section is irrelevant since she unambiguously testified that it was the cracked-windshield violation and not the windshield-tint violation that she observed.  [*Id.* at 5].  The Government also points out that but for Wade's mistake in adding a ".1" to the cited code section (O.C.G.A. § 40-8-73.1 as opposed O.C.G.A. § 40-8-73), she would have properly included a reference to the windshield-crack violation in her report.  [*Id.*].  It asserts, therefore, that Garner's unreasonable-mistake-of-fact argument should be rejected, and thus, that all of his subsequent fruit-of-the-poisonous-tree arguments also are without merit.  [*Id.* at 6-7].

9

***Analysis***

The Fourth Amendment protects people against unreasonable government searches and seizures that intrude on their reasonable expectations of privacy. U.S. Const. amend. IV; *Florida v. Jimeno*, 500 U.S. 248, 250 (1991); *United States v. Place*, 462 U.S. 696, 706-07 (1983).  Accordingly, a search or seizure must normally be conducted under the authority of a court-issued warrant, supported by a finding of probable cause to believe that evidence of a crime will be found in the targeted location. *Skinner v. Ry. Labor Execs' Ass'n*, 489 U.S. 602, 619 (1989); *Mincey v. Arizona*, 437 U.S. 385, 390 (1978).  " '[S]earches conducted outside the judicial process . . . are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' "  *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967) (footnote omitted)); *see also United States v. Campbell*, 920 F.2d 793, 795 (11th Cir. 1991) ("A search without a warrant based on probable cause is illegal, unless the government can show that it falls into one of those limited exceptions recognized by law.").

"Upon a motion to suppress evidence garnered through a warrantless search and seizure, the burden of proof as to the reasonableness of the search rests with the prosecution.  The Government must demonstrate that the challenged action falls within

AO 72A
(Rev.8/8
2)

one of the recognized exceptions to the warrant requirement, thereby rendering it reasonable within the meaning of the fourth amendment." *United States v. Freire*, 710 F.2d 1515, 1519 (11th Cir. 1983) (citation omitted).  The burden to establish the application of the warrant exception is by a preponderance of the evidence.  *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974) ("[T]he controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence.") (citing *Lego v. Twomey*, 404 U.S. 477, 488-89 (1972)). A preponderance of the evidence simply means an amount of evidence that is enough to persuade the Court that the existence of a fact is more probable than its non-existence. *Metropolitan Stevedore Co. v. Rambo*, 521 U.S. 121, 137 n.9 (1997); *see also United States v. 4 Meadowbrook Lake Condominium, Unit 308, Condominium # 8, Located at 314 SE 10th Street, Dania, Florida 33004*, No. 06-60079-CIV-COHN/SNOW, 2007 WL 809681, at *3 (S.D. Fla. Mar. 15, 2007) ("A preponderance of the evidence means that the United States 'must present an amount of evidence sufficient to persuade the court that the claim or contention is more likely true than not true.' ") (citation omitted).

"A traffic stop, which is a seizure within the meaning of the Fourth Amendment, is constitutional if it is either based upon probable cause to believe a traffic violation

11

has occurred or justified by reasonable suspicion in accordance with *Terry [v. Ohio]*, 392 U.S. 1 [(1968)].” *United States v. Spoerke*, 568 F.3d 1236, 1248 (11th Cir. 2009) (citations and quotation marks omitted).  If probable cause to believe a traffic violation has occurred does not exist, police officers may conduct a brief investigatory stop of a vehicle “if they have a reasonable, articulable suspicion based on objective facts that an individual is engaged in criminal activity.”  *United States v. Harris*, 526 F.3d 1334, 1337 (11th Cir. 2008) (quotation marks omitted).  “A determination of reasonable suspicion is based on the totality of the circumstances,” and the issue is “whether, given the circumstances, reasonable suspicion objectively existed to justify [the investigatory stop].” *Harris*, 524 F.3d at 1337-38 (quotation marks omitted).  Reasonable suspicion can be formed while observing legal activity.  *Id.* at 1338.  Further, the Court views the totality of the circumstances in the light of the officer’s special training and experience because “behavior, seemingly innocuous to the ordinary citizen, may ‘appear suspect to one familiar with [criminal] practices.’ ” *United States v. Smith*, 201 F.3d 1317, 1323 (11th Cir. 2000) (quoting *United States v. Glover*, 957 F.2d 1004, 1010 (2d Cir. 1992)).  In order for there to be reasonable suspicion, the officer must “be able to point to specific and articulable facts, which, when taken together with rational inferences from those facts, reasonably warrant” the intrusion of

AO 72A
(Rev.8/8
2)

a traffic stop. *Terry*, 392 U.S. at 21. Whether an officer has a reasonable suspicion is an objective question viewed from the standpoint of a reasonable police officer at the scene. *Ornelas v. United States*, 517 U.S. 690, 696 (1996); *see also Harris*, *id.* (holding that "the issue is not whether the particular officer involved 'actually and subjectively had the pertinent reasonable suspicion, but whether, given the circumstances, reasonable suspicion objectively existed to justify [the investigatory stop]' ") (quoting *United States v. Nunez*, 455 F.3d 1223, 1226 (11th Cir. 2006)). Thus, "whether reasonable suspicion existed at the time [of the investigatory stop] is a question of law to be determined ultimately by judges, not policemen . . . ." *Hicks v. Moore*, 422 F.3d 1246, 1252 (11th Cir. 2005) (citing *Evans v. Stephens*, 407 F.3d 1272, 1280 n.9 (11th Cir. 2005) (en banc)).

The Court concludes that Wade had reasonable suspicion to perform a traffic stop on the Honda that Garner was driving. Georgia law provides in relevant part that "[n]o motor vehicle shall be operated with a windshield or rear window having a starburst or spider webbing effect greater than three inches by three inches." O.C.G.A. § 40-8-73(e). At the time of the encounter, Wade had been a police officer for over six years and had experience in making approximately sixty-five traffic stops involving starburst or spiderweb windshield cracks over this time, and she testified

13

credibly that she observed either a starburst or spiderweb windshield crack in the Honda.  She was close enough to visually inspect the windshield both when following the Honda on Buford Highway for a quarter of a mile and when it turned left into the parking lot.  Her view was not obstructed by the passengers, since the crack she described was on the driver's side and the passengers were seated on the opposite side of the vehicle.  At the hearing, she held up her hand and made a "C" in the shape and size of the crack she observed.  Her testimony was partially corroborated by Cannon's testimony that the last time Cannon saw the Honda it had a "Y" crack across the bottom of the windshield with at least one five-inch crack going off in another direction.  Further, Wade's testimony is not made less credible by her incorrect citing to another windshield-related code section in her report.  Finally, the Court discerns no lack of credibility based on Wade's not taking any photographs at the scene.  She had her video camera running during the entire incident and there is no evidence that she knew that the video images would not readily capture the windshield crack that she observed with her naked eye.  Also, having then discovered two loaded shotguns in the vehicle, including one just to the left of where Garner was just seated and in his immediate reach, suffice it to say that matters more pressing than taking pictures of windshield cracks soon became the object of Wade's attention.  The Court therefore concludes that

14

Wade was authorized to make a traffic stop on the Honda to investigate the cracked-windshield violation.

Even if reasonable suspicion did not exist, Garner is not entitled to suppression of the contents of the vehicle because he was not the subject of a traffic stop and because he abandoned the vehicle. First, it is clear from the videotape that Garner voluntarily and independently of any request by Wade to stop, pulled his vehicle into the parking spot at the shopping center. The video reflects that Garner was not prompted by Wade to pull into the parking space, and had already begun turning into the spot and in fact was over halfway into the parking spot at the time the video shows that Wade's vehicle was close enough to the Honda to effectuate a command to stop. In short, the evidence shows that Wade did not stop Garner; rather Garner voluntarily stopped the vehicle on his own. As such, this case is similar to *United States v. Baker*, 290 F.3d 1276, 1279 (11th Cir. 2002), where the Eleventh Circuit held that a police officer's approach to vehicle stopped in traffic did not constitute a seizure under the Fourth Amendment.

On the other hand, Garner was seized when he was ordered to return to the Honda. seizure by means of show of authority requires both a show of authority and submission to that authority. *California v. Hodari D.*, 499 U.S. 621, 628 (1991);

15

*United States v. House*, 684 F.3d 1173, 1199 (11th Cir. 2012).  However, such seizure was lawful.  A police officer who lacks probable cause but whose " 'observations lead h[er] reasonably to suspect' that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to 'investigate the circumstances that provoke suspicion.' "  *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984) (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 881 (1975).  Wade had reasonable suspicion to investigate the cracked windshield, and as a result, her command to Garner to reenter the Honda was lawful.  *United States v. Clark*, 337 F.3d 1282, 1288 (11th Cir. 2003) (holding officer did not violate passenger's Fourth Amendment rights when he ordered him to reenter vehicle and keep his hands visible after officer encountered passenger's companions fighting in the street); *see also Rogala v. District of Columbia*, 161 F.3d 44, 53 (D.C. Cir. 1998) (holding that an officer may require passenger to stay in stopped vehicle); *United States v. Moorefield*, 111 F.3d 10, 13 (3d Cir. 1997) (holding that during routine traffic stop, officer does not offend Fourth Amendment by ordering driver and passenger to stay in vehicle with their hands in view).

Therefore, when Garner disregarded Wade's lawful command to stay in his vehicle and instead ran away, there was probable cause to arrest him for obstruction

AO 72A
(Rev.8/8
2)

under Georgia law.  Under Georgia law, a person commits misdemeanor obstruction of an officer when he "knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties." O.C.G.A. § 16-10-24(a).  To be guilty of misdemeanor obstruction, a person need not have engaged in violence or forcible resistance.  *See Pinchon v. State*, 237 Ga. App. 675, 675, 516 S.E.2d 537, 538 (1999).  Refusing to comply with an officer's command is sufficient to form the basis of an obstruction charge.  *See Council v. State*, 291 Ga. App. 516, 517-18, 662 S.E.2d 291, 293 (2008) (holding that "a refusal to comply with an officer's lawful demand to remain in a vehicle [while the officer is completing an investigation] will sustain a conviction for misdemeanor obstruction") (citing *Arsenault v. State*, 257 Ga. App. 456, 457, 571 S.E.2d 456, 458 (2002)); *Johnson v. State*, 234 Ga. App. 218, 219-20, 507 S.E.2d 13, 15 (1998) (finding evidence "sufficient to present a jury question on the obstruction charge" where defendant refused to exit his vehicle when instructed to do so by an officer); *Larkin v. State*, 230 Ga. App. 129, 130, 495 S.E.2d 605, 606 (1998) (finding evidence sufficient to sustain denial of defendant's motion for directed verdict where defendant had "refused [the officer's] command to return to his car, created a disturbance, and

17

hindered police from arresting his brother-in-law").[6]   Thus, Garner was lawfully

arrested, *Atwater v. Lago Vista*, 532 U.S. 318, 354 (2001) (stating that "[i]f an officer

has probable cause to believe that an individual has committed even a very minor

criminal offense in his presence, he may, without violating the Fourth Amendment,

---

[6]      Although Garner has not raised the issue, the Court observes that the
Government refers to the obstruction offense with regard to "flight" (as opposed to
refusing to comply with Wade's command to get back in the car), [Doc. 35 at 7, 11],
yet there was no probable cause to arrest Garner for "flight" because the evidence does
not demonstrate that upon Garner's flight from the Honda, Wade ever commanded him
to halt.   Absent evidence of the officer's clear command to stop, there is no crime of
misdemeanor obstruction.   *Thomas v. State*, 322 Ga. App. 734, 739,
746 S.E.2d 216, 221 (2013); *Chaplin v. State*, 141 Ga. App. 788, 790,
234 S.E.2d 330, 332 (1977) (flight, or attempted flight, before a command to halt did
not support conviction for obstruction of an officer).   *Cf. In the Interest of E.G.*,
286 Ga. App. 137, 139, 648 S.E.2d 699, 701 (2007) (rejecting juvenile's claim that no
evidence showed he had been told to stop and holding that "flight, or attempted flight,
after a command to halt constitutes obstruction of an officer within the meaning of
O.C.G.A. § 16-10-24") (citation and punctuation omitted.).   The record merely reflects
Wade yelling "Shut the door," Govt. Ex. 1 at 02:01-02, as Garner alighted from the
vehicle a second time.

Nonetheless, there still was probable cause for arresting Garner for failing to
remain in the vehicle as directed because the validity of the arrest is based on the
objective review of the record and not the officer's subjective intentions at the time of
the arrest.   *Lee v. Ferraro*, 284 F.3d 1188, 1195-96 (11th Cir. 2002) ("Quite simply,
'[t]he validity of an arrest does not turn on the offense announced by the officer at the
time of the arrest.' . . . Indeed, '[w]hen an officer makes an arrest, which is properly
supported by probable cause to arrest for a certain offense, neither his subjective
reliance on an offense for which no probable cause exists nor his verbal announcement
of the wrong offense vitiates the arrest.' "); *United States v. Saunders*, 476 F.2d 5, 7
(5th Cir. 1973) (same).

arrest the offender"), and the shotgun shells that were located in Garner's overalls' pocket were lawfully seized from Garner when he was lawfully searched incident to his arrest for obstruction. *United States v. Robinson*, 414 U.S. 218, 235 (1973).

As for the search of the Honda, Garner abandoned the vehicle by fleeing from it in violation of Wade's command to remain in the vehicle, and thus has no "standing" to challenge the search. The Government bears the burden of proving abandonment, and seizure of evidence may not be contested as violative of the Fourth Amendment if the evidence has been abandoned. *United States v. Jefferson*, 451 Fed. Appx. 833, 834 (11th Cir. Dec. 29, 2011) (citing *United States v. Cofield*, 272 F.3d 1303, 1306 (11th Cir. 2001)). Evidence may be deemed abandoned upon an individual's relinquishment of possession or control over it. *Cofield*, 272 F.3d at 1306-07. The critical inquiry in determining whether property has been abandoned is "whether the person prejudiced by the search . . . voluntarily discarded, left behind, or otherwise *relinquished his interest in the property* in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search." *United States v. Ramos*, 12 F.3d 1019, 1022 (11th Cir. 1994) (quotations and citations omitted) (emphasis in original). Although abandonment that is merely the product of police misconduct may not be voluntary, *United States v. Pirolli*, 673 F.2d 1200, 1204

19

(11th Cir. 1982), "[p]olice pursuit or the existence of a police investigation does not of itself render abandonment involuntary," *United States v. Colbert*, 474 F.2d 174, 176 (5th Cir. 1973).

In this case, Wade had reasonable suspicion to perform a traffic stop in order to investigate the cracked-windshield violation. Garner's disobedience of Wade's lawful command to return to the vehicle and subsequent flight constitutes abandonment of any privacy interest in the Honda necessary to afford him the right to challenge the subsequent warrantless search. *United States v. Falsey*, 566 Fed. Appx. 864, 866-68 (11th Cir. May 20, 2014); *United States v. Williams*, 569 F.2d 823, 826 (5th Cir. 1978); *United States v. Edwards*, 441 F.2d 749, 753 (5th Cir. 1971). In all three of these cases, the Eleventh Circuit or former Fifth Circuit held that the voluntary flight from a vehicle (or in *Williams*, 569 F.2d at 824, unhooking a trailer and leaving it on the roadside) in the course of a police investigation constituted abandonment of "any reasonable expectation to a continuation of his personal right against having his car searched under these circumstances, and thus [the loss of the operator's] Fourth Amendment rights." *Edwards*, 441 F.2d at 753. Since Wade had reasonable suspicion to perform a traffic stop and acted lawfully in performing that stop, the case upon which Garner relies, *Beck*, 602 F.2d at 729-30, is inapposite because, unlike in *Beck*, Garner's flight

20

was not prompted by an unlawful detention and, thus, his abandonment is deemed voluntary. Therefore, Garner may not challenge the warrantless search of the Honda, and the Fourth Amendment proves no impediment at trial to the admission into evidence of the shotguns located therein against him.[7]

Finally, since Garner was lawfully arrested and the attendant search of his person was constitutionally justified, and he has no lawful ability to challenge the search of the vehicle, his post-arrest statements given to Wade and Sergeant Austin at the DPD approximately ninety minutes after his arrest were not tainted by any unlawful search and arrest. Therefore, his statements are not inadmissible on Fourth Amendment grounds.

### Conclusion

Accordingly, for all of the above reasons, the undersigned **RECOMMENDS** that Defendant Garner's motion to suppress, [Doc. 12], be **DENIED**. The Court has now ruled on all matters referred to it and has not been advised of any impediments to the scheduling of a trial. Therefore, the undersigned **CERTIFIES THIS CASE READY FOR TRIAL**.

---

[7]     Since the Court concludes that Garner may not challenge the search of the Honda, the Court need not discuss the Government's alternative argument that the arrest of the backseat passenger gave the officers lawful cause to search the vehicle.

21

**IT IS SO RECOMMENDED AND CERTIFIED**, this the 14th day of March, 2016.

_____

ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

22